# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** **Plaintiff,** **vs.** **DUSTIN NEAL SAKSA,** **Defendant.** | **CR 10-131-BLG-JDS** **ORDER** |

Presently before the Court is the Defendant's Motion to Suppress. On September 6, 2011, a hearing was held on this motion. Defendant was represented by Federal Defender Mark Werner. The Government was represented by Special AUSA Ed Zink. Testimony was taken during the course of the hearing from Yellowstone County Detective Frank Fritz, CCSIU Detective Thomas Benjamin and

ATF Special Agent Carl Anuszczyk. The Defendant testified as well. After having reviewed the transcript of the hearing in this case in conjunction with the Parties' respective briefs, this Court is prepared to render a ruling at this time.

FACTUAL BACKGROUND

Defendant Saksa is currently charged in a two-count Indictment for (1) Felon in Possession and (2) Possession of a Firearm that is not registered in the National Federal Registry, specifically a sawed-off shotgun. Defendant's current suppression hearing only challenges the possession of the sawed-off shotgun.

On December 19, 2009, Defendant's prior landlord, Leslie Heinrichs, reported that there was stolen contraband left at the basement apartment that Defendant was renting at 922 ½ Westgate Drive, Lockwood, Montana. Mr. Heinrichs had previously evicted Defendant Saksa and his mother. Based on this and the discovery of stolen contraband, District Judge Gregory Todd issued a search warrant of Defendant's residence. During the course of the search, a Browning 12 gauge shotgun with shortened stock and barrel was found and seized.

On December 21, 2009, Defendant was interviewed by Yellowstone County Detective Frank Fritz. Prior to the interview, Fritz read Defendant his Miranda Warning and confirmed that the Defendant read the English language and that he understood his rights. Defendant Saksa signed a Miranda Warning Form and agreed

to be interviewed.

When questioned about the seized items from Defendant's residence, Saksa responded that he had no knowledge of the items and that the Defendant had several people come over to his residence that sometimes left items there. When questioned about the shotgun, Saksa first stated that he obtained the shotgun from his grandfather. He subsequently changed his statement and said that he obtained the shotgun from a friend but would not tell Detective Fritz the name of the friend.

In addition, Detective Fritz stated that he noticed that the Defendant was unable to sit still through the interview. Based on this, Fritz began questioning the Defendant about his drug involvement. Over the course of the interview, Defendant agreed to cooperate with law enforcement and to speak to a drug investigator.

Detective Fritz and Defendant agreed that Fritz would return the next day and obtain a formal recorded statement. Detective Fritz returned on December 22, 2009 with CCSIU Detective Tom Benjamin and ATF Agent Carl Anuszczyk. Defendant was interviewed in the DUI center at Yellowstone County Detention Facility. Benjamin and Anuszczyk began the interview by questioning the Defendant about his drug use and the shotgun. At that time, Defendant Saksa provided information about his drug involvement. He further indicated that he wanted to cooperate regarding the shotgun. Defendant stated that he received the shotgun from his brother. Saksa made

these admissions *before* Detective Fritz read him his Miranda rights a second time. The record further reflects that neither CCSIU Detective Benjamin nor ATF Agent Anuszczyk recall having given the Defendant a Miranda warning or not.

After this discussion was completed, Detective Fritz informed Saksa that he only wanted to talk about the stolen property. Detective Fritz then re-informed Saksa of his Miranda rights and took out a tape recorder to obtain a formal statement. It was at this time that Defendant Saksa stated that he wanted to talk to an attorney first. The interview was then terminated by Detective Fritz.

DISCUSSION

The crux of the present suppression hearing is whether Defendant's admission that he received the shotgun from his brother should be suppressed because Saksa was not re-Mirandized prior to the admission. Defendant contends that the officers were required to re-advise him of Miranda warnings before beginning the second day of questioning. Generally, courts have rejected a *per se* rule requiring police to re-advise a suspect of his rights before questioning him and leaning more in favor of a more flexible approach focusing on the totality of the circumstances. *Wyrick v. Fields*, 459 U.S. 42, 48–49 (1982). "The courts have generally rejected a per se rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." *United States v. Andaverde*, 64 F.3d 1305, 1312 (9th

Cir.1995). For example, courts have upheld the admissibility of statements made nearly fifteen hours after Miranda warnings were administered. *Guam v. Dela Pena*, 72 F.3d 767, 770 (9th Cir.1995); see also *Puplampu v. United States*, 422 F.2d 870 (9th Cir.1970) (interval of two days); *Maguire v. United States*, 396 F.2d 327, 331 (9th Cir.1968) (interval of three days).

Here, it appears that the interval in time between Defendant Saksa's challenged statements were sufficiently "close in time to the original advice of rights," despite the interval of approximately of 21 hours, and that he "understood those rights as given to him in English." In light of the aformentioned precedents approving delays of similar and greater length, this Court concludes that it was "not [necessary] that Defendant Saksa be advised of his rights" again. *Andaverde*, 64 F.3d at 1313 (statements made one day after Miranda warning).

Consequently, Defendant concedes that the gap of one-day in this case does not necessarily mandate re-Mirandizing. What Defendant does challenge is that when, on December 22, 2009, after CCSIU Detective Benjamin and ATF Agent Anuczcyk were done questioning Saksa and Detective Fritz then re-Mirandized the Defendant before he talked to him about the stolen property, Defendant Saksa invoked his right to an attorney.

Based on this, Defendant contends that he did not understand the meaning of

his prior Miranda warning until after it was given to him a second time by Detective Fritz. Defendant contends that if he had been re-warned of his Miranda rights at the beginning of the second interrogation on December 22, 2009, rather than midway through, he would have invoked his right to an attorney prior to having made any incriminating statements. Defendant contends that the facts of this case establish that the initial Miranda warning was inadequate and ineffective and that he should have been re-Mirandized prior to any second interrogation.

Facially, it does appear that Defendant points to circumstances which "suggest the effectiveness of the earlier Miranda warnings was diminished" or inadequate on the second day of the interrogation. *Dela Pena*, 72 F.3d at 770. A "rewarning is not required simply because there is a break in questioning." *Id*. at 769.

However, this argument is unpersuasive in light of the Defendant's testimony on the stand. When questioned by the Government, Defendant acknowledges that he has been arrested numerous times before. *Tr. at 62-63*. Further, Defendant acknowledges that he had been advised of his rights many times before the instance at issue. *Id.* As such, Defendant acknowledged that he knew the meaning of his Miranda rights. *Id.*

Further, in *Andaverde*, 64 F.3d at 1312–13, the presence of one officer throughout two interrogations supported conclusion that failure to re-administer

warnings did not require suppression, notwithstanding the presence of new interrogators at second round of questioning. Moreover, it is also significant that Defendant Saksa was in custody continually from the time warnings were first administered through the second day interview. *Dela Pena*, 72 F.3d at 769. Thus, there were no intervening events which might have given Defendant Saksa the impression that his rights had changed in a material way over the course of 24 hours between interrogations.

This Court concludes that there was no obligation on the investigators to give the Defendant a second Miranda warning at the beginning of the second interview. This is especially true given the close proximity in time between interrogations, the fact that the same interrogator was present, and the Defendant was still in custody. In addition, the initial warning evidences a clear Miranda recitation and a signed Miranda warning form. The Defendant could just have easily understood the initial Miranda warning and just changed his mind and wanted to talk to an attorney. Such a reconsideration does not necessarily taint the initial Miranda warning.

Most importantly, the Defendant testified at the suppression hearing that he had been arrested numerous times before and had been read his Miranda rights before. As such, he states that he understood the meaning of the Miranda warnings. Consequently, this Court concludes that the Defendant understood the Miranda

warning and therefore the statements made by him regarding the possession of the sawed-off shotgun were voluntarily and intelligently made.

For the foregoing reasons, IT IS HEREBY ORDERED that the Defendant's Motion to Suppress (*Doc. #23* ) is DENIED.

Dated this 22nd day of September, 2011.

/s/ Jack D. Shanstrom

Jack D. Shanstrom
Senior U.S. District Judge